UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael BARRESI, Defendant-Appellant.

No. 79–5065
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 22, 1979.

Wm. J. Sheppard, Jacksonville, Fla., (Court-appointed), for defendant-appellant.

Robert S. Yerkes, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

undermine the precision and certainty afforded by the current rule.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir. 1970, 431 F.2d 409, Part I.

Before COLEMAN, FAY and RUBIN, Circuit Judges.

PER CURIAM:

The defendant-appellant, Michael Barresi, appeals his conviction of passing counterfeit obligations of the United States in violation of 18 U.S.C. § 472. The evidence was circumstantial, and the sole issues raised are its sufficiency and the correctness of a jury instruction relative to exculpatory statements.

We review the facts in connection both with the challenged charge and the attack on the sufficiency of the evidence.

On Saturday, September 30, 1978, during a visit from Barresi's landlord, Jerry Sosnowski, Barresi offered to pay his October, 1978 rent. The landlord testified that Barresi, without leaving the table, reached into his shirt pocket, counted off $200 in twenty dollar bills, handed the money to him and put the remainder back in his pocket. Sosnowski kept his money separated from other money in his wallet and spent one of the bills at a cocktail lounge that evening.

. On Monday, October 2, 1978, Sosnowski was about to deposit the money appellant gave him, but he noticed that the bills looked peculiar. Upon closer scrutiny, he discovered that each of them had the same serial number. Consequently, he contacted the Secret Service, told it what had happened, and relinquished the 9 remaining bills. These bills were later stipulated to be counterfeit.

On Wednesday, October 4, 1978, two Secret Service agents interviewed Barresi at his home. One of the agents testified that Barresi first stated that he did not know anything about counterfeit notes. Barresi was then advised of his constitutional rights; he indicated that he understood these rights and that he was willing to speak to the agents. The agents explained to Barresi how they had received the counterfeit bills. He replied that he did not know he had any counterfeit notes, but that he and his wife had cashed their paychecks the day before Sosnowski's visit and had put the money in the cookie jar in the kitchen. Appellant recounted that, when Sosnowski came over, he went to the cookie jar, removed $200, and gave the money to his landlord.

Agent Petway testified that, when asked if he ever kept money anywhere else but the cookie jar, Barresi said no. Barresi further stated that the only place he keeps money (i. e. currency) on his person is in his wallet and that he never kept money in his pants or shirt pocket. Barresi was then placed under arrest and taken to the police station.

According to the testimony, Barresi first indicated at the police station that, perhaps, he had obtained the money from the bank when he cashed his paycheck. After further reflection, Barresi suggested another possibility as to where he might have gotten the money. He told the agents that on that Friday night he had had a birthday party, which was attended by his two nieces and their families. During the party he had received a telephone call informing him that a friend of the family had been involved in an automobile accident and he left to assist his friend. Barresi suggested that, while he was gone, one of his relatives might have had the opportunity to substitute the counterfeit money for the genuine money in the cookie jar. At trial, however, his nieces testified that appellant never left the party while they and their families were present, and that they did not recall a phone call concerning an accident.

Over the objection of defense counsel, the trial court gave the following instruction:

"Now, conduct of a defendant including statements knowingly made and acts knowingly done upon being informed that a crime has been committed or upon being confronted with a criminal charge, may be considered by the jury in the light of all the other evidence in the case in determining guilt or innocence. When a defendant voluntarily and intentionally offers an explanation or makes some statement tending to show his innocence and this explanation or statement is later contradicted, the jury may consider whether this circumstantial evidence points to a consciousness of guilt.

Ordinarily it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence. Whether or not evidence as to a defendant's voluntary explanation or statement points to a consciousness of guilt, and the significance to be attached to any such evidence or matters is exclusively within the province of the jury.

A statement or an act is knowingly made or done if made or done voluntarily and intentionally and not because of mistake or accident or other innocent reasons.

The jury will always bear in mind that the law never imposes upon the defendant in a criminal case the burden or duty for calling any witness or producing any evidence."

Appellant contends that the district court erred in giving this instruction because none of his statements were proved false nor were they exculpatory.

■ In suggesting a possibility for the presence of the counterfeit money in his home, Barresi told the agents of the birthday party at his house. He specifically stated that his relatives were present when he left and that, perhaps, they planted the money in his absence. The nieces' testimony that Barresi never left in their presence squarely contradicts his statement. That Barresi's entire statement concerning his relatives was a mere possibility does not negate the contradiction. Furthermore, Barresi's statement about how he gave the money to Sosnowski was contradicted by Sosnowski's testimony that appellant took the money from his pocket, not the cookie jar. Since having money in the cookie jar was an important factor in Barresi's suggestion to the agents, this contradiction becomes important. Moreover, the fact that appellant told the agents that he never kept money in his shirt pocket presents another contradiction. Thus, there was an evidentiary basis for the jury instruction.

Appellant further assigns error to the jury charge by arguing that his statements were not exculpatory but merely statements of possibility. The jury charge refers to explanations or statements tending to show the defendant's innocence. By offering possible explanations as to the presence of the counterfeit money in his home, appellant was certainly endeavoring to show his innocence, especially since he denied any knowledge as to the counterfeit nature of the bills. Thus, appellant's argument is a futile exercise in semantics, and the district court did not err in giving the charge.

■ The sufficiency of the evidence to establish Barresi's knowledge that the bills were counterfeit must be viewed in the light most favorable to the government, *Glasser v. United States*, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, with all credibility choices considered in support of the jury verdict. *United States v. Black*, 5 Cir. 1974, 497 F.2d 1039. Given this standard, the legal test is whether a jury could conclude that the evidence and its inferences are inconsistent with every reasonable hypothesis of innocence. This test is the same even when, as here, circumstantial evidence plays a crucial role in the government's proof. *See United States v. Sink*, 5 Cir. 1978, 586 F.2d 1041, 1048.

■ Barresi argues that the possibility that his relatives substituted counterfeit bills for genuine currency is a reasonable hypothesis of his lack of knowledge that the bills were counterfeit and, therefore, of his innocence. However, the jury could reasonably have believed that no substitution of money was made at Barresi's birthday party.

The judgment is therefore AFFIRMED.