UNITED STATES of America,
Plaintiff-Appellee,

v.

William Henry FORREST,
Defendant-Appellant.

No. 79–5530
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 14, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Jeffries H. Duvall, Tallahassee, Fla. (Court-Appointed), for defendant-appellant.

Donald S. Modesitt, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before GODBOLD, REAVLEY and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Appellant Forrest was convicted by a jury of perjury in violation of 18 U.S.C. § 1621 (1976) and of jury tampering[1] in violation of 18 U.S.C. § 1503 (1976). The perjury and jury tampering charges grew out of alleged misconduct on the part of appellant during a prior trial on charges of interstate transportation of stolen motor vehicles and other charges. The perjury conviction which we are now asked to review relates to testimony appellant Forrest gave during a pre-trial suppression hearing in connection with the prior trial. The jury tampering charge relates to certain actions appellant was alleged to have taken while that prior trial was in progress. Appellant Forrest was sentenced to three years imprisonment on the perjury count and three years on the jury tampering count, to be served concurrently.

In this direct appeal, appellant asks this court to order the lower court to enter a judgment of acquittal[2] or to reverse the lower court's denial of his motion for new trial. Appellant urges three grounds in support of his motion for a judgment of acquittal: (1) that evidence to support the perjury conviction was insufficient as a matter of law; (2) that any false statement was immaterial and therefore not in violation of 18 U.S.C. § 1621; and (3) that the evidence was insufficient to support the jury tampering conviction. In addition, appellant raises three grounds in support of his motion for new trial: (1) that the trial judge erred in denying severance of the charges; (2) that the trial judge erred in denying his pre-trial motion for continuance; and (3) that he was deprived of a fair trial due to the substantial prejudice resulting from his appearance in prison garb before the jury venire. We have examined each of these allegations of error. Finding them to be without merit, we affirm the judgment of the district court.

## PERJURY CONVICTION

Appellant was convicted of perjury in connection with his testimony at a pre-trial suppression hearing.[3] He challenges his

---

1. We refer to this count as jury tampering for convenience. 18 U.S.C. § 1503, the statute under which appellant was charged and convicted on this count, provides:

   *Influencing or injuring officer, juror or witness generally.*

   Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures

   any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 769.

2. Appellant made a motion for judgment of acquittal at the close of the government's case, Record vol. 5, at 251, and a timely renewal of that motion after the jury's verdict. Record vol. 1, at 125; 133–146.

3. Appellant's alleged perjury occurred during a hearing to consider his motion to suppress vehicles seized by the federal government. Appellant was asked by the United States Attorney whether he had title to the vehicles and when he replied "Yes," he was asked where the vehicles were purchased. The U.S. Attorney pressed appellant to specify the names of any of the companies from which he bought any of

conviction on the perjury count on the grounds that as a matter of law the government did not present sufficient evidence to support a guilty verdict and that even if appellant did lie during the suppression hearing, such falsehood was not material to the issue before the court and therefore did not constitute a violation of 18 U.S.C. § 1621 (1976).

### a. Sufficiency

■ Appellant argues that the government's evidence was insufficient as a matter of law because the government failed to present direct evidence that appellant lied.[4] In order to prove that a defendant committed perjury, the government must prove that his statements were false and that he did not believe them to be true. *United States v. Nicoletti*, 310 F.2d 359 (7th Cir. 1962), *cert. denied*, 372 U.S. 942, 83 S.Ct. 935, 9 L.Ed.2d 968 (1963), *quoting United States v. Magin*, 280 F.2d 74, 76 (7th Cir.), *cert. denied*, 364 U.S. 914, 81 S.Ct. 271, 5

L.Ed.2d 228 (1960). Appellant makes no argument concerning the inadequacy of the government's proof concerning the latter element, i. e., defendant's knowledge of falsity.[5]

With respect to the government's proof that appellant's statements were false, appellant argues that the government failed to satisfy the requirement of the so-called "two witness rule." The traditional "two witness rule," developed in perjury cases to overcome the problem of allowing proof of perjury to rest upon the oath of a single witness against the oath of the defendant, requires "that the falsity [6] of a defendant's testimony be proved by the testimony of two witnesses, or one witness corroborated by independent evidence." *United States v. Marchisio*, 344 F.2d 653, 664–665 (2d Cir. 1965). *Accord, Vuckson v. United States*, 354 F.2d 918 (9th Cir.), *cert. denied*, 384 U.S. 991, 86 S.Ct. 1896, 16 L.Ed.2d 1007 (1966). "Technically, the 'two witness' rule is a misnomer because the rule requires

the vehicles. During this line of questioning, the alleged perjury occurred. The portions of appellant's testimony which were charged as being perjurious in the indictment against him are set out as follows:

Question: How about Dealers Auction Company? Do you recall that one?

Answer: Yes, sir.

Question: You purchased some from that company?

Answer: Some of them, yes, sir.

Question: Did you go to the company to purchase them yourself?

Answer: I either went or sent someone.

Question: Did you ever go yourself to purchase any of these vehicles that have been seized?

Answer: Yes, sir.

Question: And where was it located when you went there?

Answer: That office is in Tuscaloosa, Alabama.

Question: Tuscaloosa, Alabama?

Answer: Yes, sir.

4. Appellant does not argue that the government's proof was insufficient to support the jury verdict because the jury could not have concluded that the evidence and its inferences were inconsistent with every reasonable hypothesis of innocence. *See United States v. Barresi*, 601 F.2d 193 (5th Cir. 1979). The summary of the evidence set out in the text, *infra*, makes it clear that there is no merit in such an argument in any event.

5. Even if appellant's brief is construed also to challenge the government's proof concerning

appellant's knowledge of falsity, we find that the evidence is sufficient to support the jury verdict. The Hodge testimony, discussed below, is direct evidence that appellant knew he was lying when he said he had purchased automobiles from the Dealers Auction Company. To corroborate this direct evidence, the government introduced evidence that appellant had arranged to have printed bills of sale with the name, Dealers Auction Company, and the purported address printed on them. Elsie Rhodes also testified that appellant requested and obtained her assistance in forging several Dealers Auction Company bills of sale conveying vehicles to appellant or his business.

6. The Seventh Circuit in *United States v. Magin*, 280 F.2d 74, 77 (7th Cir.), *cert. denied*, 364 U.S. 914, 81 S.Ct. 271, 5 L.Ed.2d 228 (1960) rejected the argument that the two-witness rule applies to the second element of perjury, the belief of the defendant in the truth of his statements. We need not reach that question here. Appellant does not contend that the two-witness rule was not satisfied with respect to his knowledge of his statement's falsity. Moreover, we find that any such contention would be unwarranted because the government sufficiently proved that appellant did not believe his false statement to be true by the combination of Hodge's testimony and corroborative evidence. See note 5, *supra*.

*either* the testimony of a second witness *or* other evidence of independent probative value, circumstantial or direct, that is 'of a quality to assure that a guilty verdict is solidly founded'" *United States v. Maultasch*, 596 F.2d 19 (2d Cir. 1979), *quoting, U.S. v. Collins*, 272 F.2d 650, 652 (2d Cir. 1959), *cert. denied*, 362 U.S. 911, 80 S.Ct. 681, 4 L.Ed.2d 619 (1960). In some perjury cases, the rule is abandoned altogether, as, for example, where the government's case rests predominantly on documentary evidence (as in *Stassi v. United States*, 401 F.2d 259 (5th Cir. 1968), *vacated on other grounds*, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969)) or where the objective falsity of defendant's statement depends upon defendant's subjective state of mind and therefore is incapable of direct proof (as in *United States v. Nicoletti*, 310 F.2d 359 (7th Cir. 1962), *cert. denied*, 372 U.S. 942, 83 S.Ct. 935, 9 L.Ed.2d 968 (1963)).

█ We have reviewed the record carefully and we find that the government satisfied the two-witness rule. Specifically, we hold that the government proved by sufficient evidence that appellant could not have purchased vehicles at Dealers Auction Company in Tuscaloosa, Alabama, as he testified he did, because the Dealers Auction Company did not exist and that appellant, therefore, lied.

In order to prove that Dealers Auction Company was a fictitious entity, the government presented an array of evidence. Edwin Hodge testified for the government that he knew the Dealers Auction Company did not exist because appellant told him that there was no such place as Dealers Auction Company. Record, vol. IV, at 162. We consider Hodge's testimony to be direct evidence that appellant's statement was false.[7] In addition, the government offered a considerable amount of circumstantial evidence corroborating Hodge's testimony that Dealers Auction Company did not exist. This evidence satisfies the second prong of the two-witness rule. An FBI agent testified for the government that he physically tried to find the purported address (he learned it did not exist)[8]; and that he tried to find evidence of the company's existence by checking city and telephone directories (he found that the company was not listed), by interviewing the postmaster (who said the address was nonexistent), by checking with the water company, the electric company, Tuscaloosa Credit Association, Alabama Gas, Alabama Power, the Chamber of Commerce, the tax assessor's office, the telephone company, the local police department and sheriff's office (all of which had no knowledge or record of the company). The station manager for the United States Postal Service in Tuscaloosa, Alabama, testified that there was no such address as 6231 Highway 82 South, Tuscaloosa, Alabama. A clerk in the Tuscaloosa County License Commissioner's Office testified that there was no record of such a business as the Dealers Auction

**7.** Appellant's argument that Hodge's testimony was only indirect evidence that appellant did not purchase vehicles at Dealers Auction Company is not persuasive. Hodge's testimony was that Dealers Auction Company did not exist and that he knew that it did not exist because the appellant told him so. We wonder what more direct evidence there could be of the nonexistence of the Dealers Auction Company. If the Dealers Auction Company was a fictitious entity devised by appellant, then the most direct evidence concerning that entity would come from the words spoken by appellant about the Dealers Auction Company. We hold that Hodge's testimony, which recounted an admission of the appellant and was thus not hearsay, was direct evidence of the fact that the Dealers Auction Company was a fiction. Fed.R.Evid. 801(d)(2).

If Hodge's testimony is not direct evidence, then we suggest that there can be no direct evidence to prove a negative, and we would therefore hold that the two-witness rule does not require direct evidence in this circumstance. *Compare United States v. Nicoletti*, 310 F.2d 359 (7th Cir. 1962), *cert. denied*, 372 U.S. 942, 83 S.Ct. 935, 9 L.Ed.2d 968 (1963) (Two-witness rule held inapplicable in perjury prosecution where question was whether defendant willfully and knowingly spoke falsely when he testified that he could not recall an earlier interview with FBI agents).

**8.** The address of the Dealers Auction Company was listed on the bills of sale, referred to, *infra*, as 6231 Highway 82 South, Tuscaloosa, Alabama, a nonexistent address.

Company in her office. None of these leads checked out by the FBI agent turned up evidence of the existence of the Dealers Auction Company. Every effort of these government witnesses to find evidence of the existence of the Dealers Auction Company yielded negative results.[9] No one testified that Dealers Auction Company was a real entity.

In addition, the government introduced evidence that the appellant had arranged to have printed bills of sale bearing the name and purported address of Dealers Auction Company, and that appellant had paid for these bills of sale. Record, vol. IV, at 79–89. The government further showed that some of these bills of sale were filled out and submitted to Florida officials by appellant to obtain Florida motor vehicle titles.

Finally, Elsie Rhodes testified for the government that appellant requested and obtained her assistance in forging the name "Betty Kirkland" on Dealers Auction Company bills of sale. Record, vol. IV, at 151–57. Several bills of sale bearing the name "Betty Kirkland" were introduced into evidence. The bills of sale purported to convey vehicles to appellant, his business, or Edwin Hodge. They bore the signature of "Betty Kirkland" as purported acknowledgements of receipt of cash in payment for the vehicle. Elsie Rhodes testified she made the "Betty Kirkland" signature on two of these Dealers Auction Company bills of sale. An FBI handwriting expert testified that the "Betty Kirkland" signatures, which appeared on several Dealers Auction

Company bills of sale introduced into evidence by the government, were prepared by more than one person. He testified, in addition, that the "Don Langford" signatures, which appeared on many of these bills of sale as notary signatures, were also made by more than one person. Considering all the evidence, we hold that the government has satisfied the requirements of the two-witness rule and that there was sufficient evidence to support the perjury conviction.

### b. Materiality

Appellant argues that materiality is an essential element of the crime of perjury,[10] that the allegedly false statements made at the suppression hearing were not material to the issue before the court and that therefore no violation of 18 U.S.C. § 1621 (1976) occurred. The issue before the court was whether the seizure and search of a number of trucks by the FBI was carried out in violation of appellant's Fourth Amendment rights so that the evidence (trucks) should be suppressed.

The test of materiality in a perjury prosecution is "whether the false testimony was capable of influencing the tribunal on the issue before it." *United States v. Cosby*, 601 F.2d 754, 756 n. 2 (5th Cir. 1979) (citations omitted). "The statements need only be material, however, to any proper matter of inquiry—not just to the main issue." *United States v. Gremillion*, 464 F.2d 901, 905 (5th Cir.), *cert. denied*, 409 U.S. 1085, 93 S.Ct. 683, 34 L.Ed.2d 672 (1972). Finally,

---

9. Assuming arguendo that these efforts do not affirmatively prove that Dealers Auction Company did not exist, we find them persuasive corroborative evidence that Dealers Auction Company was a fictitious entity. They demonstrate that a comprehensive search using a wide variety of reasonable techniques was used in the effort to verify the existence of Dealers Auction Company. Such a search could reasonably be expected to produce evidence of the existence of Dealers Auction Company if in fact it did exist.

10. 18 U.S.C. § 1621 (1976) provides:
    *Perjury generally*
    Whoever
    　(1) having taken an oath before a competent tribunal, officer, or person, in any case

in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true;

.　.　.　.　.

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined not more than $2,000.00 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

"[m]ateriality is a legal question to be decided by the court . . . ." *United States v. Gremillion*, 464 F.2d at 905.

■ Our review of the record, including a partial transcript of the motion to suppress, shows that one issue before the court in that hearing was whether those who consented to the searches of the vehicles had authority to do so. Appellant apparently sought to prove that he was the legal owner of some of the vehicles, that consent to search the vehicles given by third parties was ineffective and that the searches were accordingly invalid under the Fourth Amendment. Appellant's statements concerning the Dealers Auction Company were intended to show that he bought the vehicles and could thus properly assert an ownership interest in them. We hold that appellant's false statements were material to this inquiry.

## JURY TAMPERING

There is no dispute that an attempt to influence a juror was made. Both appellant and the government agree that Eloise Surratt[11] went to Panama City, where the trial of Maxine and William Forrest was taking place, and there approached her aunt, Lillie Belle Watson, one of the jurors in the Forrest trial. Eloise Surratt said to her aunt, juror Watson, that the Forrests were good people. The trial court learned of this contact through an anonymous tip and juror Watson was removed from the jury before the jury deliberations began.

Appellant, however, disputes that the government has sufficiently demonstrated his connection with the jury tampering attempt. We disagree. When considered in the light most favorable to the government and with reasonable inferences and credibility choices made in support of the jury's verdict, the evidence is sufficient to support appellant's conviction on this count. *United States v. Henderson*, 588 F.2d 157, 161 (5th Cir.), *cert. denied*, 440 U.S. 975, 99 S.Ct. 1544, 59 L.Ed.2d 794 (1979). The evidence

linking appellant to Eloise Surratt's attempt to influence juror Watson is as follows: (1) Appellant observed Lillie Belle Watson and her sister, Kate Hardy, mother of Eloise Surratt, in the courthouse on the morning that jury selection in the Forrest trial was to begin. Kate Hardy spoke to appellant and informed him that she was Eloise Surratt's mother; (2) Claude Morrell testified that someone he thought was appellant contacted him and requested that Morrell try to get in touch with Eloise Surratt and attempt to learn from her the name of a certain lady on the jury. Record, vol. V, at 38, 40. Morrell further testified that he contacted Eloise Surratt, and that he called appellant or appellant's residence back with the information requested. Appellant denies ever making or having this telephone conversation with Claude Morrell; (3) Appellant spoke with Don Surratt, Eloise Surratt's husband, and offered to buy a plane ticket for Eloise to go to Panama City from Louisiana where she was living, and offered as well to drop the price of a car that appellant had sold to the Surratts. Appellant admits that he offered to buy Eloise a plane ticket, but contends that he did so to enable her to get away from her husband, and further contends that she agreed to pay him back. He denies that he reduced the price of the automobile as Don Surratt testified. See Record, vol. VI, at 27, testimony of appellant; (4) It is undisputed that appellant Forrest did actually buy a plane ticket for Eloise Surratt for her use on October 25, 1978, during the pendency of the trial; (5) When Eloise Surratt arrived in Panama City, while the trial was in progress, she was picked up by appellant's brother at the airport, taken to a restaurant and then to the Forrests' house. She was seen talking with appellant and his wife. Appellant denies that he suggested that Eloise Surratt or Don Surratt should contact juror Watson or that Claude Morrell should do so. Record, vol. VI, at 37. He further denies that he ever discussed

11. Eloise Surratt was a friend and former employee of Claude Morrell (Maxine Forrest's brother) and a friend of Maxine Forrest. Eloise

Surratt died between the time of the Forrests' Panama City trial and appellant's perjury and jury tampering trial.

her aunt with Eloise Surratt. Record, vol. VII, at 35.

Appellant suggests that it is equally or perhaps more likely, in light of the facts presented by the government, that Claude Morrell, appellant's brother-in-law, instigated the jury tampering attempt on behalf of his sister. Appellant, testifying in his own behalf, described an incident between himself and his brother-in-law, Claude Morrell, which he alleged created bad feelings between them. Such bad feelings might suggest an ulterior motive for Claude Morrell's harmful testimony against appellant.

█ The jury, however, was free to reject that suggestion. We think that the jury could reasonably have concluded "that the evidence and its inferences are inconsistent with every reasonable hypothesis of innocence." *United States v. Barresi*, 601 F.2d 193, 195 (5th Cir. 1979). Applying this standard, we think the evidence is sufficient to show that appellant endeavored to influence juror Watson through Morrell and Eloise Surratt as intermediaries. Approaching a juror through an intermediary is sufficient to constitute an attempt to influence a juror, *United States v. Howard*, 569 F.2d 1331, 1334 (5th Cir.), *cert. denied sub nom. Ritter v. United States*, 439 U.S. 834, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978); this is so even though the endeavor failed as it did here when the government received an anonymous tip concerning the jury tampering attempt and Watson was removed from the jury. *See United States v. Russell*, 255 U.S. 138, 41 S.Ct. 260, 65 L.Ed. 553 (1921); *Overton v. United States*, 403 F.2d 444, 446 (5th Cir. 1968).

**12.** Rule 8 of the Fed.R.Crim.P. provides in pertinent part:

Joinder of Offenses and of Defendants.
(a) *Joinder of offenses.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

**13.** Rule 14, Relief from Prejudicial Joinder, provides as follows:

## SEVERANCE

█ Appellant contends that the court erred in denying his motion to sever the perjury charge from the jury tampering charge. In reviewing the trial court's denial of the motion to sever, we must determine first, as a matter of law, whether the initial joinder of charges was proper under Rule 8(a) Fed.R.Crim.P.[12] and second, whether the trial judge abused his discretion in denying the motion under Rule 14 Fed.R.Crim.P.[13]. *See United States v. Park*, 531 F.2d 754 (5th Cir. 1976). In addressing the misjoinder allegation, we are guided by this circuit's view that "Rule 8 is to be broadly construed in favor of initial joinder." *United States v. Park*, 531 F.2d 754, 761 (5th Cir. 1976), *citing Tillman v. United States*, 406 F.2d 930, 934 (5th Cir.), *vacated on other grounds*, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969), and *United States v. Friedman*, 445 F.2d 1076, 1082 (9th Cir.), *cert. denied sub nom. Jacobs v. United States*, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971). We find that the perjury and jury tampering charges were based on the same transaction or are two different transactions connected together in that they derive from the trial of appellant for interstate transportation of stolen vehicles. Alternatively, we find that the charges constitute parts of a common scheme or plan, *i. e.,* to avoid conviction on the interstate transportation of stolen motor vehicles charges. We hold that joinder of the charges was proper as a matter of law under Rule 8(a) Fed.R.Crim.P. *Compare*

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or an information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendant which the government intends to introduce in evidence at the trial.

*United States v. Abshire,* 471 F.2d 116, 118 (5th Cir. 1972) (joinder of charge of interstate transportation of stolen motor vehicles and charge of interstate transportation of a firearm by a felon held proper under Rule 8(a) because "both offenses arose out of the same sequence of events."); *Tillman v. United States,* 406 F.2d 930 (5th Cir.), *vacated on other grounds,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969) (joinder of charge of attempting to interfere with the administration of Universal Military Training and Service Act and charge of willfully injuring property of the United States held properly joined because "the offenses arise out of a series of connected acts" 406 F.2d at 934); *United States v. Park,* 531 F.2d 754, 760–61 (5th Cir. 1976) (consolidation of separate indictments for manufacture of controlled substance and receipt by a convicted felon of a rifle and a shotgun held proper under Rule 8(a) because the offenses were based on the same transaction, the court noting that both items were found during a search of the defendant's house, and saying "[b]oth charges owed their origin to illicit drug activities."); *United States v. Friedman,* 445 F.2d 1076, 1083 (9th Cir.), *cert. denied sub nom. Jacobs v. United States,* 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971) (joinder of perjury charge and attempting to influence a prospective witness charge with charges concerning grand jury transcripts held proper under Rule 8(a) because the charges alleged "a closely related series of acts all done in pursuit of a single goal," *i. e.,* to escape conviction).

■ In deciding appellant's motion to sever under Rule 14, Fed.R.Crim.P., the trial judge was required to balance the prejudice to the defendant against the interests of judicial economy. *United States v. Cuesta,* 597 F.2d 903, 919 (5th Cir.), *cert. denied,* 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979). The standard guiding our review of the district court's denial of appellant's motion to sever is whether the district court abused its discretion. *United States v. Cuesta,* 597 F.2d at 919. Appellant asserts that he was prejudiced by the trial court's refusal to sever in that he desired to testify

as to one count but not the other. He argues, additionally, that the trial of two different crimes at the same time was prejudicial because the jury might regard one as corroborative of the other.

■ As to the latter point, we think that the possibility of this kind of prejudice exists whenever a defendant is charged with more than one count in an indictment. We do not find it a sufficient reason to order a new trial in this case.

■ As to the former point, this court found in *Alvarez v. Wainwright,* that "[s]everance is not mandatory simply because a defendant indicates that he wishes to testify on some counts but not on others. Rather, '[s]everance for this reason, as for any other, remains in the sound discretion of the trial court.' " 607 F.2d 683, 685 (5th Cir. 1979), *quoting from United States v. Williamson,* 482 F.2d 508 (5th Cir. 1973). We pointed out in *Alvarez* that a defendant seeking severance of charges because he wishes to testify with regard to some charges but not others has the burden of demonstrating "that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." *Alvarez v. Wainwright,* 607 F.2d at 686, *quoting from Baker v. United States,* 401 F.2d 958, 977 (D.C.Cir.1968), *cert. denied,* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). Appellant did not make that showing here. Appellant's bare allegation that he wanted to testify with respect to one count but not with respect to the other gave the trial judge no factual basis on which to evaluate possible prejudice. Under these circumstances, we find that the district court did not abuse its discretion in denying severance of the charges.

## DENIAL OF CONTINUANCE

■ The trial of this case was rescheduled several times between the original trial date of March 12, 1979, and the actual trial of the case beginning on July 18, 1979. Appellant's substituted counsel, appointed June 11, 1979, had five weeks to prepare for trial. Appellant was tried alone and his

trial was not complex or lengthy. We find that the district court did not abuse its discretion in denying appellant's motion for continuance. *United States v. Cueto*, 611 F.2d 1056 (5th Cir. 1980).

## JAIL GARB

On the first day of appellant's trial, when appellant appeared before the jury venire, he was dressed in khaki prison clothing with a laundry number stenciled on the seat of his pants. Appellant argues that his appearance in prison clothing before the jury venire, objected to by his counsel, was prejudicial and denied him his Fourteenth Amendment rights. Appellant was dressed in civilian cloths for the remaining three days of the trial. Record, vol. VII, at 20. We are unable to agree that appellant's appearance in his prison-issued clothing before the venire impaired the presumption of his innocence and thus entitles him to a new trial.

On the morning that jury selection was to begin, appellant's counsel objected to appellant's appearance in prison-issued clothing before the jury venire. The trial court then excused the jury to give appellant an opportunity to secure civilian clothing from his wife. When appellant's wife failed to appear with the clothing, the court allowed jury selection to proceed that afternoon. Prior to the beginning of that process, however, the trial judge specifically noted his impression of the appellant's clothing and directed the marshal to photograph the outfit appellant was wearing for the benefit of any reviewing court. Among other things, the trial judge observed:

> The closest I can see is a—closest description would be an army khaki summer uniform with the short sleeves, khaki trousers and khaki short-sleeve shirt without any insignia. That type of attire is what Mr. Forrest is wearing. And there is no indication on it that he is in any way in custody.

Record, vol. III, at 5.

We have examined the marshal's front-view photograph of the appellant and the khaki trousers appellant was wearing when he appeared before the jury venire. The trousers bear a four-digit black laundry mark three-quarters of an inch high in two places on the back, one at the belt and the other approximately two inches below the belt and above the left rear pocket. We find it extremely unlikely that the laundry numbers, even assuming they were noticed by the jurors, would have identified the otherwise plain khaki pants as prison clothing.

The facts of this case are very much like those in *United States v. Dawson*, 563 F.2d 149 (5th Cir. 1977), where this court held that "plain khaki clothing worn by the appellant did not mark him as a prisoner . . . ." 563 F.2d at 152, and that he was thus not entitled to a new trial. In *Dawson*, the trial court engaged in a colloquy with the defendant and his attorney about defendant's clothing prior to bringing in the jury.[14] Defendant's counsel noted that defendant's pants had zig-zags or what purported to be arrows on one seam on the outside of one pantleg. The court found that the khaki shirt and trousers furnished by the United States Bureau of Prisons "did not appear to be the usual prison garb," did not "give any indication in any way that the defendant is in confinement" and were "not likely to prejudice the defendant." *Id.* at 150–151, n. 2. We noted in *Dawson* that "[i]t is the extent to which the defendant's clothing is communicative of his status as a prisoner (and inferentially a criminal) which determines whether or not he was denied a fair trial." *Id.* at 152. We are confident that appellant's dress did not "badge him as a criminal in the jury's eyes, as in the case with prison uniforms." *United States v. Casey*, 540 F.2d 811 (5th Cir. 1976).

Appellant's convictions on both counts are accordingly

AFFIRMED.

14. *United States v. Dawson*, 563 F.2d at 150–151, n. 2.