**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Larry Dean ROGERS,
Defendant-Appellant.**

**No. 84–5150.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 1985.

Decided Aug. 29, 1985.

James Asperger, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

William J. Genego, Noel M. Ragsdale, Michael Young, Los Angeles, Cal., for defendant-appellant.

## OPINION

Before WRIGHT, ALARCON, and NORRIS, JJ.:

ALARCON, Circuit Judge:

Larry Dean Rogers (hereinafter Rogers) appeals from the judgment entered following his conviction for committing five bank robberies while armed with a dangerous weapon.

He asserts that reversal is compelled on the following grounds.

One. The district court compelled Rogers over his objection, to stand trial in identifiable prison clothes in violation of his right to a fair trial.

Two. The district court violated Rogers' Sixth Amendment right to the effective assistance of counsel by forcing him to go to trial with an attorney with whom he had an irreconcilable conflict.

Three. There is a reasonable probability that he would not have been convicted but for defense counsel's unprofessional conduct, errors, and omissions in the investigation, preparation, and presentation of the defense.

Four. The district court committed plain error in admitting evidence of statistical probability and two bandanas found in Rogers' possession when he was arrested.

We affirm because we have concluded that the record does not support any of these contentions.

We discuss each issue and the facts pertinent thereto under separate headings.

## I

### COMPELLED APPEARANCE IN IDENTIFIABLE PRISON CLOTHES

■ Rogers argues that he was compelled, over his objection, to appear before the jury in identifiable prison clothes in violation of his right to a fair trial. Rogers correctly relies upon *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) and *Bentley v. Crist,* 469 F.2d 854 (9th Cir.1972) in support of the rule that an accused may not be compelled to be tried before a jury in identifiable prison clothes. The record before this court, however, fails to demonstrate that an objection was made on this ground or that the clothing was identifiable to the jurors as prison issue.

The first reference to the clothing worn by Rogers when he was brought to court, on the day of trial, appears in the following colloquy which occurred prior to the selection of the jury:

MR. TREMAN [defense counsel]: Your Honor, I wonder if I might beg the Court's indulgence with regard to Mr. Rogers' current clothing condition.

I understand from him that this morning the condition of his clothes at Terminal Island were not in very good condition. Therefore, he came to court dressed in the most presentable clothing that he could find at that time which was the outfit that he has on now.

He has now indicated to me that there is a source which we can get some additional clothing for him. However, it's going to take me a little bit of time to accomplish that.

THE COURT: Well, how much time are you talking about, Mr. Treman?

MR. TREMAN: Your Honor, in order for me to get the clothing, I will have to locate his wife who is currently at work, and gain access to the family residence.

THE COURT: No. No, I won't wait.

First of all, he looks quite presentable.

Is that a jumpsuit that's issued by Terminal Island?

THE DEFENDANT: Yes, it is, your Honor.

THE COURT: Defendants often appear just like that. I don't think it makes that much difference.

You can attempt to get ahold of her. I'll give you time to call her, and if she can get the—

THE DEFENDANT: Your Honor—

THE COURT: Let me finish, Mr. Rogers.

If she can get this down by noon, that's fine. He can change in the marshal's lockup, but we have a whole jury panel waiting.

MR. TREMAN: I understand, your Honor.

THE COURT: Those people are entitled to consideration.

You can change at noon.

MR. TREMAN: All right, your Honor. I'll see if I can do that. If I am successful in getting them, I presume, then, that the Court will direct the marshals to permit him to change in the lockup today?

THE COURT: I take my morning recess normally at 11:00. If the clothing is down here by that time, why, he can change then.

MR. TREMAN: Fine.

THE COURT: That's fine with me.

MR. TREMAN: Thank you.

THE DEFENDANT: Thank you, your Honor.

Defense counsel did not discuss Rogers' clothing again until the court returned to this subject after the noon recess during the following dialogue:

THE COURT: Please be seated.

Bring in the jury.

Couldn't we get together on the clothes?

MR. TREMAN: Yes, your Honor. On that matter, I've made arrangements to be able to get new clothes for him here in the building tomorrow morning by 8:30 if that will be acceptable for the marshals to have him change downstairs before coming to court.

THE COURT: Okay. Let's see that we do it timely, though, and don't get held up on it.

It is clear from this record that no objection was made by defense counsel that it would be a violation of Rogers' right to a fair trial to be compelled to appear before the jury in identifiable prison clothes. Instead, after advising the court that Rogers has selected the outfit he was wearing, as "the most presentable clothing he could find," instead of wearing his own clothing, because they were "not in good condition," defense counsel informally requested a short delay in the start of jury selection in order to attempt to get "additional clothing." When the court refused to delay the proceedings because the prospective jurors were entitled to consideration, counsel acquiesced to the court's suggestion that the trial should proceed but that the prisoner could change during the noon recess.

No claim was made to the district court that the clothes worn by Rogers would be identifiable to jurors as prison clothing. In fact, the trial judge, who has had many years of experience in presiding over criminal proceedings, was uncertain as to the source of the clothes. The record shows that he asked Rogers if he was wearing "a jumpsuit issued by Terminal Island." The record contains no other description of the clothing Rogers wore to court, except that they were khaki-colored.

In *Estelle, supra,* the Supreme Court held that a state cannot compel an accused to stand trial before a jury while dressed in identifiable prison clothes. *Id.,* 425 U.S. at 512, 96 S.Ct. at 1696.

The court noted, however, that the accused must object to being tried in jail garments.

[The] failure to make an objection to the court as to being tried in such [identifiable prison] clothes, *for whatever reason,* is sufficient to negate the presence of compulsion necessary to establish a constitutional violation.

*Id.* at 512–13, 96 S.Ct. at 1697 (emphasis added).

A trial judge has no duty to inquire *sua sponte* if the accused would prefer not to go to trial in *identifiable* prison garb. *See Estelle,* 425 U.S. at 512, 96 S.Ct. at 1697 (the decision whether to appear before the jurors in identifiable prison clothes as a matter of strategy or tactics "rests with the accused and his attorney").

In *Bentley, supra,* decided prior to *Estelle,* we held that the record must show that the prisoner "was in fact compelled to wear prison clothing" at his trial. *Id.* at 856.

A person seeking reversal of his conviction because he was compelled to stand trial in prison garments must demonstrate from the trial record that a juror would recognize the clothing as having been issued by prison authorities. *See Bentley,* at 855 (the accused was compelled to wear distinctive overalls imprinted with the words "Missoula County Jail"); *Hernandez v. Beto,* 443 F.2d 634, 636 (5th Cir.), *cert. denied,* 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971) (the accused wore a white T-shirt and dungarees stamped with the words "Harris County Jail").

Rogers appears to suggest that the district court had the duty "to carefully examine Mr. Rogers' clothes on the record and find that they had no markings or other distinctive characteristics which would identify the clothes as prison garb." None of the cases cited place this duty on the court in the absence of a proper objection. In each case relied upon by Rogers, a proper objection was made before the trial court.

In *United States v. Forrest,* 623 F.2d 1107, 1116 (5th Cir.), *cert. denied,* 449 U.S. 924, 101 S.Ct. 327, 66 L.Ed.2d 153 (1980), the defendant was brought to court in khaki prison clothing. He objected to "appellant's appearance in prison-issued clothing before the jury venire." In denying the motion, the trial court described the clothing for the record as similar to "an army khaki summer uniform." *Id.* at 1116. The trial court in *Forrest* also directed the marshal to photograph the prison outfit "for the benefit of any reviewing court." The concern shown by the district court in *Forrest* for the work of reviewing courts made review of the accused's claim easier. We would hope that all trial judges faced with a prisoner's objections to being compelled to appear before a jury in prison clothes would be as considerate. *Forrest,* however, does not impose on the trial judge

the duty to make a record to negate a defendant's unsupported claim that his prison clothes were identifiable as such.

In *United States v. Dawson,* 563 F.2d 149 (5th Cir.1977), the defendant, prior to voir dire, objected to being tried in "Jailhouse clothes." *Id.* at 150. The district court examined the clothing and described the prison garments as an "ordinary pair of khaki pants with no identification." *Id.* at 150, n. 2. The district court in *Dawson* concluded that the prisoner "projected a neat and clean appearance which gave no indication that he was in confinement." *Id.* at 150. The Court of Appeals in *Dawson* requested that counsel produce a similar set of khaki clothing for its examination. After independently examining the clothing, the Fifth Circuit concluded that the district court had correctly determined that the prison clothes were not identifiable as prison garments. *Id.* at 151. The Fifth Circuit also observed in *Dawson* that the duty in prison garb cases is to determine, "on a case by case basis" whether there has been an "impairment of the presumption of innocence." *Id.* at 151. That duty does not arise, however, in the absence of a proper objection. We do not read *Dawson* as suggesting than an examination of the clothing worn by the prisoner is required where the issue was not properly raised in the district court.

Rogers also implies that our decision in *United States v. Panza,* 612 F.2d 432 (9th Cir.1979), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980) and 447 U.S. 926, 100 S.Ct. 3020, 65 L.Ed.2d 1118 (1980) requires a trial court to make an express finding that prison issue clothing is not readily identifiable as prison garb. In *Panza,* the district court found that the clothing worn by the prisoner during voir dire was not identifiable as prison garb. We held that this finding was clearly erroneous. *Id.* at 440. While the brief discussion of this issue in *Panza* does not set forth the manner in which this issue was raised in the trial court, we relied upon *Estelle* as controlling authority. As discussed above, *Estelle* requires that a spe-

cific objection be made in the trial court to raise the issue of compulsion on appeal.

In the hope of assisting prison authorities, prosecutors, criminal defense lawyers, and trial judges in dealing with this sensitive issue, we summarize our view of the law as follows:

■ One. An accused has no constitutional right to appear before a jury in civilian clothes. *Dawson,* 563 F.2d at 151.

Two. An accused may not be compelled, however, to appear before a jury in *identifiable* prison clothes. *Estelle,* 425 U.S. at 512, 96 S.Ct. at 1696.

■ Three. Failure to object to the appearance of the accused in identifiable prison clothes, for whatever reason, is a waiver of the right to claim compulsion. *Estelle,* 425 U.S. at 512–13, 96 S.Ct. at 1696–97.

■ Four. The accused must make a record before the trial court that the accused's clothing would be identifiable to the jury as prison garments. *Bentley,* 469 F.2d at 856.

■ Five. A finding by the district court, in response to a proper objection, that the prisoner was *not* wearing identifiable prison clothes must be supported by the record. *See Forrest,* 623 F.2d at 1116.[1]

Rogers failed to make an objection against being compelled to be tried before a jury in *identifiable* prison clothes. Instead, through counsel, he appears to have acquiesced in the court's suggestion that he stand trial in a prison issued khaki jumpsuit until civilian clothing was obtained for him.

While it is clear that Rogers, through counsel, informally requested a short delay in the commencement of the trial, in order to obtain "additional clothing," the district court did not abuse its discretion in denying the motion because it was untimely and out of consideration for the convenience of the jurors. Rogers had no constitutional right

to appear in civilian clothes. He failed to object to being compelled to appear in *identifiable* prison clothes. Finally, the record does not show that he was compelled to appear in identifiable prison garb.

Roger's claim of compulsion is not supported in this record.

## II

### NO IRRECONCILABLE DIFFERENCES

■ Rogers contends that the district court abused its discretion by refusing to substitute appointed counsel after being advised by Rogers that there were irreconcilable differences. A district court's refusal to substitute counsel is reviewed for abuse of discretion. *United States v. Williams,* 594 F.2d 1258, 1260–61 (9th Cir. 1979).

■ This court has set forth the following factors to be considered when reviewing the denial of a motion to substitute counsel: (1) timeliness of the motion; (2) adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense. *Hudson v. Rushen,* 686 F.2d 826, 829 (9th Cir.1982), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983).

■ On the morning of the trial, Rogers, for the first time, informed the court that he was dissatisfied with his attorney. While there were no scheduled court appearances between the time of arraignment and trial, a period of five weeks had elapsed during which Rogers could have notified the court of his dissatisfaction or requested counsel to do so. We have upheld the denial of a motion for substitution of counsel when the request was made on the eve of trial. *United States v. Altamirano,* 633 F.2d 147 (9th Cir.1980), *cert.*

---

1. While not presently mandated by any appellate decision, a photograph of the clothing worn at trial or admission of an exhibit consisting of similar clothing will greatly assist in habeas corpus or appellate review of a compulsion claim. *See Forrest,* 623 F.2d at 1116 (description by the court and photograph).

*denied,* 454 U.S. 839, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); *United States v. Michelson,* 559 F.2d 567, 571–72 (9th Cir. 1977).

Rogers expressed two concerns to the district court. First, he claimed that the attorney spent insufficient time with him to prepare an adequate defense. Rogers told the court that trial counsel consulted him no more than five minutes. The court questioned defense counsel on this subject. Counsel replied that he had spent in excess of half an hour at Terminal Island "plus time before there" in discussing the case with his client.

Rogers' second complaint was that the attorney advised him to plead guilty on three counts whereas Rogers proclaimed his innocence on all five counts. The court did not interrogate the attorney concerning the alleged advise to enter a guilty plea to avoid eliciting confidential communications between Rogers and his attorney.

The record does not reflect inadequate consultation between Rogers and his attorney. The attorney stated that he spent half an hour with Rogers at Terminal Island, where Rogers was given an opportunity to review the discovery available at that time.

■ Moreover, counsel may advise a defendant to plead guilty "if that advice falls within the range of reasonable competence under the circumstances" *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 2045–46 n. 19, 80 L.Ed.2d 657 (1984) (citations omitted) and a pessimistic prognosis by counsel is not a ground for change of counsel. *McKee v. Harris,* 649 F.2d 927 (2d Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982).

The district court did not abuse its discretion in denying Rogers' request for substitute counsel.

### III

### INEFFECTIVE ASSISTANCE OF COUNSEL WAS NOT DEMONSTRATED

■ Rogers also contends that he was denied his Sixth Amendment right to effective assistance of counsel at the trial. A claim of ineffective assistance of counsel presents a mixed question of law and fact which is reviewed *de novo. Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984).

■ A defendant alleging ineffectiveness of counsel has the burden of demonstrating that: (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland,* 104 S.Ct. at 2064. The defendant must point to errors or omissions *in the record* on appeal that establish that he did not receive adequate representation. *United States v. Birges,* 723 F.2d 666, 669 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1926, 80 L.Ed.2d 472 (1984).

Rogers alleges that his trial counsel failed to make a motion to sever, failed to object to the use of a photospread, failed to object to the introduction of the bandanas, and did not cross-examine the witnesses properly. Rogers claims that "but for" these omissions, the result of the trial would have been different. The photospread was received into evidence without objection. The bandanas were originally objected to on the basis of relevancy and the objection was sustained. The government subsequently moved again to admit the bandanas and they were admitted without objection.

■ The record does reflect the reasons, if any, that motivated counsel in planning his trial strategy and selecting the defenses he should assert. The Supreme Court cautioned in *Strickland* against second guessing defense counsel. *Id.,* 104 S.Ct. at 2065. Instead of resorting to hindsight to find fault in defense counsel's performance, we are required to "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.* That presumption can be overcome, of course, by showing a lack of professional competence. "The customary procedure for challenging the effectiveness of counsel in a federal criminal

trial is by collateral attack on the conviction under 28 U.S.C. § 2255." *Birges*, at 670. In such collateral proceedings, facts not present in the record on appeal can be developed. *Id.*

Rogers also contends that the brief period of time his attorney spent with him does not comport with the requisite adequate consultation which is an essential part of the criminal process. *See United States v. Tucker*, 716 F.2d 576, 581 (9th Cir.1983) (attorney spent twenty hours with client but could not recall any detail of what was discussed).

The present record does not demonstrate that defense counsel's consultation with Rogers was inadequate. Rogers' reliance on *Tucker* is misplaced. In *Tucker*, newly retained counsel was permitted to present evidence at the hearing on the motion for a new trial concerning trial counsel's errors, omissions, and deficiencies. *Tucker*, 716 F.2d at 578. No such showing was made in the matter before us.

A record on direct appeal from a judgment of conviction ordinarily affords us little help in resolving claims of ineffectiveness in matters involving consultation because the attorney-client privilege protects an accused from revelation of his communications with counsel. We have no way of determining, from the meagre record before us whether further communication with Rogers was necessary. If, for example, Rogers advised his attorney in the first few seconds of his consultation, that he was mentally competent and guilty as charged, further communication with Rogers would have provided an ethical lawyer scant assistance in preparing a defense. "A decision not to put forth a defense may be a conscious strategic option." *United States v. Appoloney*, 761 F.2d 520, 525 (9th Cir.1985). It is equally possible that further consultation with Rogers would have elicited facts to support an effective defensive strategy that might have raised a reasonable doubt. We cannot resolve challenges to an attorney's competence from a silent record or by engaging in fanciful speculation.

Rogers, has also failed to show any prejudice resulting from counsel's representation. The present record shows that counsel adequately defended Rogers at trial, extensively examined the witnesses and interposed appropriate objections. Counsel also introduced an affidavit of a witness who did not recognize the defendant in the photospread.

The record before us does not demonstrate ineffective assistance of counsel nor any prejudice resulting from the conduct of the defense.

## IV

## NO PLAIN ERROR IN EVIDENTIARY RULINGS

### A. *Statistical Probability*

Rogers claims that the district court committed plain error in permitting an FBI agent to testify that out of 1800 bank robberies in the Los Angeles area only 2 involved a person wearing a bandana from a vault. No objection was made to this testimony at trial. We do not review evidentiary rulings, in the absence of a timely objection, unless admission of the evidence affected substantial rights of the accused. Fed.R.Crim.P. 52(b).

It was not error to admit the challenged evidence. Rule 702 of the Federal Rules of Evidence provides that a witness qualified as an expert by knowledge, skill, experience may testify as to his specialized knowledge if it will assist the trier of fact to understand the evidence or determine a fact in issue. Defense counsel stipulated to the witness' expertise on the investigations of bank robbery cases. Law enforcement officers may testify concerning the techniques and methods used by criminals. *United States v. Fleishman*, 684 F.2d 1329, 1335 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). An expert may give his opinion even if it embraces an ultimate issue to be decided by the jury. Fed.R.Evid. 704; *Fleishman*, 684 F.2d at 1335.

It was not error to admit the challenged evidence. The testimony as to the frequency of bandana wearing in Los Angeles area bank robberies was relevant to the identity of the perpetrator of the robberies. The fact that very few robberies involve this garb makes it more likely that the same person committed both robberies. Thus, under Rule 402, the evidence was admissible, unless Rogers can invoke a specific ground for its exclusion. Fed.R.Evid. 402.

Rogers argues that the FBI agent was not qualified to testify as an expert regarding Los Angeles area bank robbery statistics. At trial, however, Rogers' counsel stipulated to the agent's expertise. It is settled that law enforcement officers may testify concerning the techniques and methods used by criminals. *See United States v. Fleishman,* 684 F.2d 1329, 1335 (9th Cir.), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). Rogers argues that the agent was not qualified as a mathematician or statistician, but such qualifications were hardly necessary to support the testimony given.

Rogers also argues that the prejudicial effect of the agent's "statistical" testimony outweighed its probative value. We need not decide if there are cases in which statistical evidence should be excluded as prejudicial because the jury is likely to overvalue the seeming precision of the statistic. *See People v. Collins,* 68 Cal.2d 319, 332, 66 Cal.Rptr. 497, 438 P.2d 33 (1968); Tribe, *Trial by Mathematics: Precision and Ritual in the Legal Process,* 84 Harv.L.Rev. 1329 (1971). In the case before us, the agent testified only as to the frequency of bandana wearing in Los Angeles area bank robberies. It is unlikely that the jury would be confused by this evidence. Rogers has failed to demonstrate that the introduction of the statistical evidence substantially affected his right to a fair trial.

B. *Admission Of The Bandanas Found In Rogers' Possession*

Rogers also complains that it was plain error for the court to receive into evidence two bandanas found on him at the time of his arrest. We disagree. The evidence showed that the perpetrator of the robberies wore a bandana. One of the bandanas found in his possession was described by an eyewitness as similar to that worn by the bank robber. While it appears to us that proof that the defendant possessed bandanas at the time of his arrest was entitled to little weight, this evidence was relevant in that it had a tendency to prove that the defendant possessed similar clothing to that worn by the robber. We fail to see how evidence of such slight weight could have been prejudicial.

CONCLUSION

The record is devoid of error. Accordingly, we AFFIRM.