**Howard HUNT, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 24601.**

United States Court of Appeals
Fifth Circuit.

Aug. 19, 1968.

Rehearing Denied Oct. 8, 1968.
Certiorari Denied Jan. 13, 1969.
See 89 S.Ct. 629.

See also, D.C., 265 F.Supp. 178.

Luther E. Jones, Jr., Corpus Christi, Tex., Warren Burnett, Odessa, Tex., for appellant.

Ernest Morgan, U. S. Atty., San Antonio, Tex., for appellee.

Before JONES, WISDOM, and THORNBERRY, Circuit Judges.

WISDOM, Circuit Judge:

Howard Hunt appeals from a judgment, entered on a jury verdict after trial, adjudging him guilty of violating 18 U.S.C.A. § 1503 by conspiring to obstruct the administration of justice. Hunt was sentenced to imprisonment for a period of two years. We affirm.

Candelario and Daniel Guerrero, brothers living in San Antonio, Texas, were charged with violating the United States narcotics laws. They retained Hunt, a San Antonio attorney, to represent them. On May 2, 1966, at the preliminary hearing before the United States Commissioner, Hunt learned the identity of the informer who had gathered the evidence to be used against the Guerrero brothers. He subpoenaed the informer, Paul Leyva, but neither side called him as a witness before the Commissioner. About noon the next day, Leyva was lured to a bar and beaten by several men, one of whom told him "I kill stoolpigeons." After Leyva had been pistol-whipped, hit in the mouth, kicked in the side, shot at and otherwise brutally treated, someone called "Lawyer Hunt." Hunt came, saw Levya, and questioned him about the case against Daniel Guerrero. The police arrived, as a result of a report of a shooting. Hunt went into the bar and sat at a table with his secretary. The co-defendants and alleged conspirators dragged Leyva to the house next door where they kept guns trained on him. Leyva was then taken to another house where his life again was threatened. In a short while the conspirators telephoned Hunt who came to the house. The others left Hunt and his secretary alone with Leyva. According to Leyva's testimony, Hunt offered to make a deal with him. The three went to Hunt's office. There Hunt dictated a statement for Leyva to sign. During the time he was at the office Leyva had to be shaken to remain conscious. Some seven hours after the beating, Hunt finally took Leyva to a doctor and then to the hospital where he remained for three or four days.

I.

The first issue raised on appeal is whether there was sufficient evidence to support the jury's verdict. The appellant concedes that the jury properly could have inferred that there existed an antecedent conspiracy to obtain by coercion a statement from Leyva. Hunt argues, however, that there was insufficient evidence, because Leyva was not a witness within the meaning of 18 U.S.C.A. § 1503 since there was no proceeding before a court of the United States against Guerrero in which Levya could have been a witness.

This argument is without merit. This Court defines a "witness" as one who "knows or is supposed to know material facts, and is expected to testify to them, or to be called on to testify * * * as a witness." Odom v. United States, 5 Cir. 1941, 116 F.2d 996, reversed on other grounds, 313 U.S. 544, 61 S.Ct. 957, 85 L.Ed. 1511. Accord: United States v. Grunewald, 2 Cir. 1956, 233 F.2d 556, reversed on other grounds, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931; Smith v. United States, 8 Cir. 1921, 274 F. 351; United States v. Perlstein, 3 Cir. 1942, 126 F.2d 789, cert. denied, 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752.

It is clear that Leyva knew material facts and that as an informer he had given his information to the Government and expected to testify to those facts in the future. The fact that the conspiracy was brought to fruition after the preliminary hearing but before the convening of a grand jury should

not relieve Hunt from responsibility for his actions. Section 1503 comes into play at least when a complaint has been filed with a United States Commissioner. United States v. Scoratow, W.D.Pa.1956, 137 F.Supp. 620; United States v. Bittinger, D.C.1876, 24 Fed.Cas.No.14,598, p. 1149.

The statute, 18 U.S.C. § 1503, is designed to prevent what occurred in this case and to punish those responsible for what happened to Leyva. If any witness ever needed protection of the law, it was Paul Leyva. If any persons ever needed restraint, it was the group who maltreated Paul Leyva.

## II.

The second issue the appellant raises is whether the indictment states an offense against the United States. The grand jury indictment begins with the words: "Beginning on or about May 2, 1966 and continuing until on or about May 3, 1966 * * *" Hunt argues that the indictment is defective in that the quoted words mean that the offense began on May 2, 1966 and ended on the same day. We regard this argument as frivolous.

The words in the indictment indicate that the offense charged took place "on or about May 3, 1966." The essentials of a valid indictment are that it be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c). The indictment here meets this standard. It charges a conspiracy, sets out the dates within which the conspiracy was formed, recites the names of the conspirators, and alleges jurisdiction and venue, the objects of the conspiracy, and various overt acts. It goes further and recites the facts and circumstances giving rise to the conspiracy. By any standard, the indictment is sufficient to enable the appellant to know what he is charged with, to prepare his defense, and to plead jeopardy in the event of subsequent convictions for the same offense.

## III.

The appellant contends that the trial court's charge did not apprise the jury of the elements of the offense in that the court did not require in its charge that the jury find that the conspiracy continued during and into May 3, 1966. Again the appellant ignores the words "on or about." The court charged that in order to convict it was necessary to decide that the conspiracy came into existence "on or about May 2, 1966." This language includes May 3, when the overt acts were alleged to have occurred, and which as the jury found, did occur on that date.

## IV.

In the district court and on appeal Hunt challenged the petit jury panel on two grounds. First, he contends that the jury commissioner and the clerk violated the federal statutory scheme for jury selection by adding the additional qualification that prospective jurors be "esteemed" in their respective communities. Secondly, he contends that the jury panel from which his jury was drawn did not represent a fair cross-section of the community in that Mexican-Americans were under-represented and higher socio-economic groups over-represented. After conducting a three-day hearing, the district court, in a carefully considered, detailed opinion, overruled the defendant's motion to quash the jury panel.

The trial court found that the alleged additional qualifications sought to achieve constitutionally qualified jurors as recommended by the Judicial Conference of the United States. The so-called "jury suggestor" letter, on which the defendant relies, does not purport to authorize discretionary or impermissible judgment on the part of jury suggestors. In Rabinowitz v. United States, 5 Cir. 1966, 366 F.2d 34, the Court held that 28 U.S.C. § 1861, as amended by the Civil Rights Act of 1957, established unform, not minimum, standards of federal juror qualifications. But in that case we concluded that the evidence showed that the jury commissioner and

the clerk exercised their discretion in selecting jurors according to higher standards than those set in Section 1861. They had their "own ideas" as to "good character, intelligence and ability to 'understand the cases that are tried in court'." Here the district court found: The jury commissioner and the clerk had not "added on to the statutory qualifications * * * They merely used a form [of questionnaire] suggested by the Judicial Conference Jury Committee. [*See* 26 Fed.Rules Dec. 411–59.]" It should be noted the letter to the "jury suggestors" requests that "they make a conscious effort to include both men and women from a variety of backgrounds and occupations so as to give * * * a representative cross-section of your community." In Brooks v. Beto, 5 Cir. 1966, 366 F.2d 1, one of the cases heard en banc with *Rabinowitz*, this Court approved the use of properly chosen key men or jury suggestors.

The evidence at the hearing showed that Mexican-Americans constituted 17.5 percent of the jury pool and 11 percent of the jury panel from which the defendant's jury was drawn. Mexican-Americans constitute about 35 percent of the population of Bexar County, where San Antonio is located.[1]

The district court found that no discrimination has ever been exercised in the division with regard to race, religion, national origin, or economic status. No name of a juror has ever been rejected for reasons of lack of character, esteem, or bad judgment. The Clerk had made deliberate efforts to obtain names of Mexican-Americans for the jury box. The Jury Commissioner invited leaders of the Mexican-American Community into his home and solicited their help in obtaining names of Mexican-Americans for the jury box. He fully understood his duty in this respect, and conscientiously sought to carry it out. He made no effort to exclude or discriminate against any segment of the community. The trial judge instructed him to obtain jurors from a cross-section of the community. The Commissioner understood that this would include persons with Spanish surnames, and persons of high, low, and middle economic status.[2] He sought names from labor officials in order to help balance out the socio-economic groups.

In Swain v. State of Alabama, 1964, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, the Court stated: "We cannot say that purposeful discrimination based on race alone is satisfactorily proved by showing that an identifiable group in a community is underrepresented by as much as 10%." Here the Court found:

"If the six-year school standard is used, the variance between that percent and the percent eligible would be 4.4 percent. If the five-year school standard is used, the variance would be 6.5 percent. In the case of Swain v. State of Alabama, supra, the Court stated, (p. 205 of 380 U.S., p. 827 of 85 S.Ct.): 'But purposeful discrimination may not be assumed or merely asserted.' It is the view and holding of the Court that the difference between 11 per cent and 15.4 per cent and/or 17.5 per cent does not constitute such a disparity as to indicate discrimination as to Mexican-Americans."

On these and other facts, as they appear in the record, the defendant failed to show any pattern of discrimination.

---

1. The San Antonio Division consists of 14 counties. The population of Bexar County constitutes around 75 percent of the population of the division. The jury panel for this case contained jurors in varying numbers from 13 of the counties. The defendant does not contend that there was any disproportion between the number of members on the panel from Bexar County and the number from the other counties. The abuse of jurors from one county was due to the practice of random drawing.

2. There were three Negroes on the jury, a fact that suggests that the clerk and jury commissioner use adequate sources for the selection of Negroes for jury service. There are 50,000 Negroes in Bexar County or about 6 percent of the population. There are no notations as to race in the master jury box.

**310**

Cf. Labat v. Bennett, 5 Cir. 1966, 365 F.2d 698; Davis v. Davis, 5 Cir. 1966, 361 F.2d 770; Brooks v. Beto, 5 Cir. 1966, 366 F.2d 1.

In view of the defendant's failure to make out a prima facie case of discrimination, we consider that the trial judge did not abuse judicial discretion in rejecting Hunt's request that he be permitted to examine earlier jury panel lists.

We agree with the conclusion of the court below:

It clearly appears that seldom has such a vigorous, determined and widespread effort been made to have the jury lists represent a broad spectrum of the community and a fair cross-section thereof as has been made in the San Antonio Division.

The judgment is affirmed.