Fernando **RODRIGUEZ, Jr.,** et al.

v.

**The Honorable Archie S. BROWN** et al.

Civ. A. No. 68–206–SA.

United States District Court
W. D. Texas,
San Antonio Division.

June 13, 1969.

Pete Tijerina, Mario Obledo, San Antonio, Tex., Jack Greenberg, New York City, for plaintiffs.

James E. Barlow, San Antonio, Tex., Lonny F. Zwiener, Austin, Tex., for defendants.

Before SPEARS, Chief District Judge, GOLDBERG, Circuit Judge, and ROBERTS, District Judge.

SPEARS, Chief District Judge:

Plaintiffs allege that the selection of grand jury commissioners and grand jury members in Bexar County, Texas results in an unconstitutional limitation on the number of Mexican-Americans which serve on those two bodies. They further assert that the Texas statutes relating to the selection of grand jury commissioners, as well as grand juries, are violative of the United States Constitution, and request the formation of a three-judge district court pursuant to the provisions of Title 28 U.S.C. Section 2284.

This action is brought by plaintiffs, individually and as members of a class, to wit, Mexican-American citizens, who are qualified under state law to serve on jury commissions and grand juries in Bexar County. They seek to "redress the deprivation of rights, privileges and immunities secured by the Fourteenth Amendment to the Constitution of the United States and by one or more of the following statutes: 42 U.S.C., Section 1983; 18 U.S.C., Section 243," and charge that there has been a systematic, unlawful and unconstitutional exclusion of Mexican-Americans from grand jury commissions and grand juries in Bexar County. In this connection, they assert that the inclusion of a "minimal or token number of Mexican-Americans on the grand jury commissions and grand juries does not prevent the systematic exclusion theory from operating."

Finally, plaintiffs would have this Court enter a declaratory judgment,

pursuant to Title 28 U.S.C., Sections 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, declaring that Articles 19.01, 19.04 and 19.08 of the Texas Code of Criminal Procedure, relating to the selection of jury commissioners and grand juries in Texas, are unconstitutional, arbitrary and unlawful in that they deny to plaintiffs and members of the class they represent the equal protection of the laws and due process of law as secured by the Fourteenth Amendment to the Constitution of the United States.

On May 12, 1969, in Rodriguez v. Brown, 299 F.Supp. 479 (W.D.Tex. 1969), the three judges comprising the panel designated to hear this cause agreed with the conclusions previously reached by the presiding judge that the statutes under attack are constitutional[1], and that this is a one-judge, not a three-judge matter.

However, in view of the fact that counsel indicated they desired oral argument with respect to all aspects of the case, this cause came on for trial before the three-judge panel on May 29, 1969, See Rodriguez v. San Antonio Independent School District, 299 F.Supp. 476 (W.D.Tex.1969), after which all three judges, having fully considered the complete record, the briefs and the arguments of counsel, in open court reaffirmed their decision that this is a case properly to be decided by one judge.

With respect to the manner in which the statutes under attack are applied, the presiding judge, in his order of October 14, 1968, (in part quoted from in Rodriguez v. Brown, supra, 299 F.Supp. 479), said, in pertinent part, that:

"* * * The defendants, in their answer, have attached appendices containing a list of grand jury commissioners selected by the District Judges for a two year period and a list of the grand jury panel selected by the grand jury commissioners over the last two years. Exhibit A lists grand jury commissioners and underscores the names of those commissioners with probable Mexican-American background. Of the thirteen commissions listed, nine of them have at least one member, or 20%, with a Spanish surname, three of them have at least two members, or 40%, and one of them has three members, or 60%, with Spanish surnames. Exhibit B includes a listing of thirteen grand juries selected by the grand jury commissions set out in Exhibit A. On one of the grand jury panels selected, there were seven persons who had Spanish surnames. The remaining twelve panels include one panel with three persons of Spanish surname, five panels with two persons of Spanish surname, five panels with at least one person of Spanish surname, and one panel with no members of Spanish

---

[1]. This decision upholding the constitutionality of the statutes being attacked is predicated, as indicated, upon decisions of the United States Supreme Court in Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940); Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945); Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950); and Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954). However, Judge Wisdom concurring in the result reached in Brooks v. Beto, 366 F.2d 1 (5th Cir. 1966), expressed grave doubts about the constitutionality of the Texas system, characterizing it as, among other things, "anachronistic". Judge Brown, in writing the opinion for the majority of the Court quotes from Justice Black's opinion in Smith v. Texas, supra,

311 U.S. at 130–131, 61 S.Ct. at 165, saying, in part that "[B]y reason of the wide discretion permissible in the various steps of the plan, it is equally capable of being applied in such a manner as practically to proscribe any group thought by the law's administrators to be undesirable". In light of growing criticisms of the system, the members of the Texas Legislature would no doubt be well-advised to consider an amendment thereof, perhaps to a system which parallels that for the at random selection of petit jurors at the State level, or to one similar to that employed by federal courts in the selection of both grand and petit jurors. Such action on their part could well avoid the possibility of further constitutional attacks at some time in the future.

surname. In this connection, the statistical information reflected in United States v. Hunt, 265 F.Supp. 178 (W.D.Tex.1967), affirmed, No. 24601, 5th Cir. Aug. 19, 1968[2], reveals that as regards the percentage of 'Mexican-Americans among citizens of Bexar County who are eligible for federal court jury service', using a five-year school standard, 17.5 percent of the community statutorily qualified jury pool is composed of 'Mexican-Americans'. Using a six-year school standard, the percentage would be 15.4. If the percentages gleaned from the investigation into the statutorily qualified jury pool in federal court are applied to the 'facts' in this case, as represented by the defendants in Exhibits A and B, we find that approximately 28 percent of the total membership of the thirteen grand jury commissions is composed of 'Mexican-Americans' and approximately 16 percent of the total membership of the thirteen grand juries is composed of 'Mexican-Americans'. There would not appear to be such a disparity as to indicate discrimination as to 'Mexican-Americans'.

"Although plaintiffs' complaint would appear to contain sufficient allegations to invoke this Court's jurisdiction, there has not yet been a showing of prima facie discrimination or a systematic exclusion. * * *"

■ Plaintiffs have been allowed ample time since the entry of that order to produce "affidavits of the nature contemplated by Rule 56(e), Federal Rules of Civil Procedure, depositions, answers to interrogatories, and/or admissions", but this Court is still of the opinion that they have failed to support their claim that there has been a systematic, unlawful and unconstitutional exclusion of Mexican-Americans from grand jury commissions and grand juries in Bexar County. This was virtually conceded by their attorneys during oral argument.

■ Subsequent to the entry of the order of October 14, 1968, however, plaintiffs filed additional pleadings to "clarify" their original position by placing more emphasis on their challenge of the statutory requirement that grand jury commissioners be freeholders and that grand jury members be freeholders or householders, alleging that these amount to socio-economic discriminations based upon wealth and property.[3]

Specifically, plaintiffs assert that they represent the following classes:

(a) Qualified citizens, whether Mexican-American or not, who claim to be discriminated against because of the requirement that a person must be a freeholder in the state to serve as a grand jury commissioner, or either a freeholder in the state or a householder in the county to serve as a grand juror.

(b) Qualified Mexican-American citizens who have never been called or asked to serve as grand jury commissioners or as grand jurors and who meet the qualifications for such service, including that of being a freeholder in the state and a householder in the county.

(c) Wage earners, meaning both salaried employees and daily wage earners.

Assuming that plaintiffs have standing to represent each of the foregoing classes, but at the same time fully realizing that their legal position in each instance is highly debatable and fraught with considerable doubt, it is interesting to note that they are engaged in the fol-

---

2. 400 F.2d 306 (5th Cir. 1968) cert. den., 393 U.S. 1021, 89 S.Ct. 629, 21 L.Ed.2d 566.

3. One of the requirements for eligibility for appointment as a grand jury commissioner (see Article 19.01, Texas Code of Criminal Procedure) is that the person be a qualified juror and freeholder in the county; prospective grand jurors must, among other things (see Article 19.08, Texas Code of Criminal Procedure) be freeholders within the State or householders within the County, or wives of such householders.

lowing occupations: Fernando Rodriguez, Jr., is employed at Kelly Air Force Base in San Antonio, Texas, as an industrial engineer and technician; Genaro R. Garcia is employed at the United States Post Office, San Antonio, Texas, as a mail carrier; William C. Velasquez is employed by the Mexican-American Unity Council as its executive director; William S. Velasquez is employed by Swift and Company, San Antonio, Texas, as a butcher. Only one of these plaintiffs, William C. Velasquez is ineligible for service as either a grand juror or a grand jury commissioner, since it appears that he is neither a freeholder in the state nor a householder in the county.[4] Furthermore, it can hardly be said that either of the plaintiffs is among the economically disadvantaged members of the class which they seek to represent.

Circumstances and chance, as well as the relatively small number of persons chosen for service on the commissions and grand juries each year[5], account for the fact that many eligible persons, Mexican-Americans as well as persons of other descent, have not been selected for such service, yet this result does not constitute discrimination per se.

Plaintiffs insist that "wage earners" are discriminated against by the procedures being utilized. They urge that most of the grand jury commissioners occupy relatively high positions on the socio-economic scale and that the tendency on their part is to select prospective grand jurors who are also on this "higher level" scale. They urge that although the judges make an effort to select representative cross-sections of the community, they also have a tendency to choose commissioners that they are acquainted with personally and who also are on a "higher scale". They further criticize the procedures because the commissioners do not go into the community and consult various organizations and groups before determining their candidates for service on the grand jury. In this connection, it is interesting to note that a fair number of those chosen as grand jurors and commissioners have been "wage earners".

Article 19.01 of the Texas Code of Criminal Procedure requires the district judge to appoint five jury commissioners. The depositions of the district judges in Bexar County demonstrate that they have made good faith attempts to appoint as commissioners those who represent cross sections of the community, and they have consistently instructed the commissioners to follow the same practice, especially admonishing them not to deny to anyone the privilege of serving on the basis of race, color or creed. The record in this case includes a transcript of proceedings before the Honorable Anees A. Semaan, judge of the 175th Judicial District Court of Bexar County, relative to the selection of grand jury commissioners for the July-August Term of 1968. Once the grand jury commissioners were qualified, the

---

4. In this connection see Turner v. Fouche, 290 F.Supp. 648 at page 652 (S.D.Ga. 1968), where in studying a problem with regard to the alleged exclusion of Negroes from school boards in Georgia, the Court concluded that "[t]he provision requiring that members of the school board be freeholders has not been shown to be an unconstitutional requirement. There was no evidence to indicate that such a qualification resulted in an invidious discrimination against any particular segment of the community, based on race or otherwise".

5. Out of the approximately 180,000 persons in Bexar County eligible for service on grand juries or as commissioners, only thirty (30) grand jury commissioners are appointed each year, and only one-hundred and twenty (120) prospective grand jurors are selected by these commissioners. Of this number, seventy-two (72) are ultimately placed on the lists as grand jurors, the policy of the district judges being to select the first eligible twelve (12) from the list compiled by the commission [there are six terms of court in Bexar County, Texas, and at each term five (5) grand jury commissioners are appointed, who in turn select twenty (20) individuals which comprise the list from which the grand jury composed of twelve (12) individuals is ultimately selected].

court instructed them concerning their duties. He advised them that they were to select twenty (20) grand jurors from different parts of the county, and that they would be provided with a city directory, a criss-cross directory, and a telephone book, and by using these they were to compile a list of twenty (20) eligibles. The court further advised them that they were free to make their choice in any way they wanted, but suggested that they simply take turns naming candidates, until they had completed the list with the required number. They were also told that they could accomplish their task in any other "impartial, representative manner", but that a concensus was preferable. The record further reflects that more often than not, the procedure suggested by the court, i.e. "taking turns" suggesting names, was employed by the commissioners. In further instructing the commissioners, the judge used the following language, which points up quite clearly the fact that the court was interested in having the commissioners comply with the letter and spirit of the law. (The record also includes similar statements made by the Honorable Archie S. Brown, judge of the 144th Judicial District Court of Bexar County, and it appears that the procedure here detailed is typical of that used whenever grand juries were selected): "Now, the purpose of a grand jury commission, of course, is to get a cross-section of our entire community life, to get a cross-section representing all parts, geographic parts of our community, as well as all segments of our community life; and, toward that end, that's all I can tell you about selecting: that you use your own judgment, your own conscience, your own ideas of what is fair and impartial and is representative of the whole county in making your selections. This, it obviously goes without saying, is not a place where I reward my friends by putting them on the grand jury commission because actually there is not much reward. There is a great deal of work and responsibility when you place someone on there. And this choice of whoever goes on the grand jury is a very serious choice and someone that has to be considered in the light of the statute, which requires that all parts of the county be represented and that all walks of our community life be represented". Having been so instructed, the commissioners proceeded to the selection of prospective grand jurors, accomplishing their task in less than half a day.

Under the circumstances here, this court holds that plaintiffs have failed to show that discrimination reaching constitutional proportions exists in the administration of the statutes involved; consequently, there is no occasion for the issuance of injunctive relief. This is not to imply, however, that plaintiffs' arguments are entirely devoid of merit. On the contrary, they have brought into sharp focus several important areas in which improvements can and hopefully will be effected by the state judicial administrative officials of Bexar County.[6]

This opinion, which constitutes the judgment of the court denying all relief prayed for by the plaintiffs, contains the findings of fact and the conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure, but the court reserves the right to file additional findings and conclusions if same are deemed necessary or appropriate.

6. In Brooks v. Beto, 366 F.2d 1 (5th Cir. 1968) at page 23, in discussing methods of becoming acquainted with the "make-up" of a community, the court, speaking through Circuit Judge (now Chief Judge) John R. Brown, said: "There are, of course, a variety of ways of going about this. One, obviously, is fairly to place on the juror-selecting body persons from or closely identifiable with such groups. The selectors thus serve the dual role as selectors and as the source of indispensable information. Another, broadly, is the establishment of a more or less systemized procedure for contacting responsible members or organizations within the class to obtain names or lists of names of those likely to be available and qualified".

Upon the joinder, by concurrence or dissent, of the remaining two judges comprising the three-judge panel, this judgment shall become final.

GOLDBERG, Circuit Judge, and ROBERTS, District Judge, concur.